UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.                        Case No. 17-20451
                              Honorable Victoria A. Roberts

KENNETH CHUN,

     Defendant.

_____/

## ORDER FINDING DEFENDANT COMPETENT TO STAND TRIAL

## I.    INTRODUCTION

The Court's duty to determine Kenneth Chun's ("Chun") competency to stand trial has become inextricably woven in a battle of experts – neuropsychologists, psychologists, and neurologists.

Representing the neuropsychologists are Doctors Robert Denney, Laura Faddell, and Peter Lichtenberg.

Representing the psychologists are Doctors George Fleming, Ira Schaer, Jacob Chavez, and Robert Denney.

Finally, the neurologists providing expert evidence are Doctors Curtis Schreiber and Arthur Emmer.

Dr. Emmer is Chun's treating neurologist.  The remaining doctors were retained by the United States, Chun or the Court to perform psychological evaluations of Chun and/or to review his medical records.

With one exception, all doctors rendered diagnoses of Chun.  There have been almost as many diagnoses rendered over the last twenty months as there are doctors involved in this case.

| Exam Date(s) | Doctor | Discipline | Diagnosis |
|---|---|---|---|
| June 12, 2017 | Dr. Emmer | Board Certified Neurologist | (1) Neurological examination results are normal<br><br>(2) Differential diagnosis for symptoms includes nonspecific age-related memory loss, Mild Cognitive Impairment versus dementia |
| June 22 & 26, 2017 | Dr. Fadell | Neuropsychologist<br><br>Clinical Psychologist | (1) Mild Cognitive Impairment, Amnestic Type<br><br>(2) Aphasia, Anomic Type |
| June 23, 2017 | Dr. Lichtenberg | Neuropsychologist | Mild Neurocognitive Disorder (a/ka Mild Cognitive Impairment) |
| July 07, 2017 | Dr. Emmer | Board Certified Neurologist | (1) No change in his status from June 12, 2017 visit<br><br>(2) "Memory loss consistent with underlying cognitive impairment. Workup for other neurologic causes has been negative. Early dementia as alternative possibility. A diagnosis of such cannot be made at this time." |
| August 25, 2017 | Dr. Emmer | Board Certified Neurologist | Memory loss – Symptoms unchanged from prior visits and neurological exam results were normal ("The patient has a one-two year history of memory loss, consistent with cognitive impairment versus early dementia. A diagnosis of the latter cannot be made.") |

| | | | |
|---|---|---|---|
| September 13, 20, & 21 2017 | Dr. Schaer | Forensic Psychologist | No differential diagnosis |
| December 4, 2017 | Dr. Emmer | Board Certified Neurologist | Memory loss – "Differential diagnosis includes cognitive impairment versus early dementia. A diagnosis of the latter cannot be made. Symptoms are clinically unchanged at this time." |
| December 20 & 21, 2017 | Dr. Fleming | Clinical Psychologist | (1) Major Neurocognitive Disorder without behavioral disturbances<br>(2) Probable Alzheimer's Disease |
| August 30 & September 4, 2018 | Dr. Fadell | Neuropsychologist<br><br>Clinical Psychologist | (1) Vascular Dementia<br><br>(2) Aphasia, Anomic type |
| August 3, 2018 | Dr. Chavez | Forensic Psychologist | Mild Neurocognitive Disorder, Vascular Disease |
| August 8, 2018 | Dr. Emmer | Board Certified Neurologist | Memory loss – Progression of his neurodegenerative disorder, conversion of Mild Cognitive Impairment to dementia |
| August 21, 2018 | Dr. Schaer | Forensic Psychologist | (1) No differential diagnosis<br><br>(2) Chun is currently suffering from a "mental disease" |
| October 16, 2018 | Dr. Emmer | Board Certified Neurologist | Memory loss – Symptoms are consistent with dementia. Differential diagnosis includes: vascular dementia, Alzheimer's, or mixed dementia |
| November 15 & 21 2018 | Dr. Fleming | Clinical Psychologist | (1) Major Neurocognitive Disorder without behavioral disturbances<br><br>(2) Probable Alzheimer's Disease |
| January 15, 2019 | Dr. Emmer | Board Certified Neurologist | Memory loss – This patient has dementia, mild to moderate. It is stable at this time. |
| February 25, 2019 | Dr. Chavez | Forensic Psychologist | Major Neurocognitive Disorder, Vascular Disease<br><br>"Unfortunately, . . . I was unable to include formal testing in the evaluation of Dr. Chun. This is a substantial limitation of the current assessment."<br><br>"Unfortunately, given the nature of the evaluation and additional barriers, further neuropsychological screening/testing could not be completed to more fully evaluate Dr. Chun's current memory capacities."<br><br>"I believe an additional period of evaluation in a structured setting is needed to clarify his abilities. There were |

| | | | significant limitations in my current evaluation including . . . the inability to more extensively evaluate the defendant's cognitive functioning using neuropsychological instruments. Another major limitation of all previous evaluations, including my own, is the defendant has not been assessed by collaborating forensic and neuropsychologists. . . . I recommend the defendant be sent for another period of competency restoration and evaluation . . . where a neuropsychologist is on staff who can collaborate with the evaluating forensic psychologist." |
|---|---|---|---|
| May 14, 2019 | Dr. Emmer | Board Certified Neurologist | Memory loss – "[P]atient has dementia, mild to moderate. There has been mild progression since the last visit." |
| May 21, 2019 | Dr. Denney | Board Certified: Neuropsychologist and Forensic Psychologist | (1) Malingering<br><br>(2) Mild Neurocognitive Disorder (Mild Cognitive Impairment) → Regarding Mild Cognitive Impairment, research demonstrates that a significant percentage of people with Mild Cognitive Impairment, either of the amnestic type or vascular type, continue with Mild Cognitive Impairment and do not convert to dementia. Chun's past cognitive screening tests at Dr. Emmer's office demonstrate clear stability over the past two and half years. It is also possible that Mild Cognitive Impairment could slowly convert to a dementing condition. |
| September 27, 2019 | Dr. Schreiber | Board Certified Neurologist | (1) The brain MRI scan images show changes compatible with normal age-related white matter changes and the images do not support a vascular Mild Cognitive Impairment or vascular dementia diagnosis.<br><br>(2) The EEG is reported as being abnormal and the pattern of findings is considered to be unexpected with Mild Cognitive Impairment or mild dementia.<br><br>(3) The cognitive screening instruments used to evaluate Dr. Chun's cognition always indicated results in the range of Mild Cognitive Impairment.<br><br>(4) Neurocognitive test batteries were reported to show more significant deficits than seen on the cognitive screening tests, which suggest over-reporting of symptoms to key examiners. |
| November 3, 2019 | Dr. Fleming | Clinical Psychologist | (1) Major Neurocognitive Disorders without behavioral disturbances<br>(2) Probable Alzheimer's Disease |

There is some agreement: all doctors believe that Chun suffers from a mental impairment, and that the impairment is at least a mild cognitive disorder.

In relevant part, the diagnostic criteria for Mild Neurocognitive Disorder (a/k/a Mild Cognitive Impairment) includes:

A.  Evidence of modest cognitive decline from a previous level of performance in one or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual motor, or social cognition) based on:

    1.  Concern of the individual, a knowledgeable informant, or the clinician that there has been a mild decline in cognitive function; and

    2.  A modest impairment in cognitive performance, preferably documented by standardized neuropsychological testing or, in its absence, another quantified clinical assessment.

B.  The cognitive deficits do not interfere with capacity for independence in everyday activities (i.e., complex instrumental activities of daily living such as paying bills or managing medications are preserved, but greater effort, compensatory strategies, or accommodation may be required).

Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 605 (5th ed. 2013) ("DSM-V").

In evaluating competence to stand trial, a decision that the defendant has a mental disease or disorder, however, is only the starting point. The ultimate decision for the Court is whether Chun is competent to stand trial:

whether his mental disorder affects his ability to understand the nature and consequences of the legal proceedings against him, and to rationally assist his counsel.

The Court finds that while Chun does have a cognitive disorder, he is competent to stand trial.

With all experts on board, the Court conducted a competency hearing on November 25-26 and December 4, 2019.

## II.  BACKGROUND

On June 29, 2017, Chun was indicted on four counts of health care fraud, in violation of 18 U.S.C. §§ 1347 and 2, and six counts of distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1).

The charges stem from Chun's ownership and control of Bloomfield Internal Medicine Associates, P.C., a participating health care provider with Medicare, Medicaid, and Blue Cross Blue Shield of Michigan ("BCBS"). The indictment alleges that he fraudulently billed Medicare, Medicaid, and BCBS for services that were not reasonable, medically necessary, documented, and/or actually provided.  Chun also allegedly distributed controlled substances, including opioids, outside the usual course of practice and without legitimate medical purposes.

On October 16, 2017, Chun filed a motion for a hearing to determine his mental competence; he said there was reasonable cause to believe he was incompetent to stand trial. The Court granted Chun's motion, noting that at that time, there was evidence that Chun has some form of mental defect. However, there was no medical consensus on its severity or how it might affect Chun's ability to understand the nature and consequences of the proceedings against him. Specifically, three different experts had evaluated Chun by that time. Dr. Ira Schaer's evaluation revealed that Chun suffered from a mental disorder that included short-term memory loss and expressive language defects. Dr. Schaer concluded that Chun was not competent to stand trial.

However, Drs. Peter Lichtenberg and Laura Fadell also examined Chun in the same time frame. They concluded Chun suffered from Mild Cognitive Impairment, less severe than the degree of impairment Dr. Schaer found.

On November 30, 2017, the Court ordered a Psychiatric or Psychological Examination under 18 U.S.C. § 4247(b). This examination was completed by Dr. George R. Fleming. Dr. Fleming found there was sufficient evidence from his psychological examination of Chun to conclude that Chun's ability to assist his counsel in his defense was impaired by his

inability to make informed decisions; his difficulty organizing information and learning new information; and his impaired capacity to form new memories. Dr. Fleming concluded that Chun's ability to fully understand the nature and consequences of the proceedings was questionable.

In light of Dr. Fleming's opinion, the parties agreed that Chun would be hospitalized for a reasonable period of time – not to exceed four months – to determine if there was a substantial probability that in the foreseeable future, Chun would attain the capacity to permit the proceedings to go forward. *See* 18 U.S.C. § 4241(d). The Court entered its order finding Chun incompetent to stand trial.

Chun was committed to the United States Medical Center for Federal Prisoners, Springfield Missouri, from April 2, 2018 until the Court ordered his release on August 6, 2018. This release was based on the Certificate of Competency signed by M.D. Smith, Warden of the Medical Center; the Warden certified that Chun was able to understand the nature and consequences of the proceedings against him and assist in the defense of the claims brought against him by the United States.

Shortly after, the defense asked the Court to conduct a hearing to determine mental competency. The defense said "reasonable cause" still existed to believe Chun was incompetent to stand trial. *See* 18 U.S.C. §

4241(a). Chun had continued to undergo expert evaluation and treatment by his own doctors.

On October 30, 2018, the Court ordered an updated evaluation of Chun by Dr. Fleming before it held a competency hearing. Also, he was re-examined by Dr. Jacob Chavez, who supervised Chun's initial restoration to competency.

The Court set a competency hearing for April 19, 2019, but the government moved to adjourn that hearing and have Chun evaluated by its own experts.

The Court granted the government's motion and ordered that the evaluation and examination of Chun could include cognitive testing and could involve active collaboration between the disciplines of psychology, neuropsychology and forensic psychology. The Court also ordered the government experts to file full reports concerning both Chun's cognitive functioning and competency to stand trial.

To that end, Dr. Denney evaluated Chun, and Dr. Schreiber reviewed Chun's medical records and brain scans.

Above, the Court sets forth the various doctors who examined Dr. Chun, the dates of examinations and testing (for Dr. Schreiber, the date of his report), and their diagnoses.

In its analysis, the Court will elaborate on these diagnoses and on competency determinations made by some experts.

## III.   ANALYSIS

After a competency hearing, the Court must make a determination concerning defendant's competency to stand trial based on a "preponderance of the evidence." 18 U.S.C. § 4241(d). "A criminal defendant may not be tried unless he is competent." *Godinez v. Moran*, 509 U.S. 389, 396 (1993).

To be competent, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 402 (1960). In determining competence, the Court should consider "several factors, including 'evidence of a defendant's irrational behavior, [the defendant's] demeanor at trial, and any prior medical opinion on competence to stand trial.'" *United States v. Miller*, 531 F.3d 340, 348 (6th Cir. 2008) (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)).

This "*Dusky* standard" indicates that a defendant is incompetent to stand trial if, because of mental illness or other condition, defendant is unable to: (1) understand the nature and objectives of the court

proceedings or (2) assist in his defense. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996); *Dusky*, 362 U.S. at 402.

"Mental incompetence is a 'high' bar to clear[,] *Miller*, 531 F.3d at 350[,] . . . [and] requires proof of a 'deep[] breakdown' in cognition, *United States v. Coleman*, 871 F.3d 470, 477 (6th Cir. 2017)." *United States v. Tucci-Jarraf*, 939 F.3d 790, 795 (6th Cir. 2019). A mental defect or disorder alone cannot establish incompetence; indeed, a person with a mental defect can nonetheless be deemed competent to stand trial if he – despite having a mental disorder – can understand the nature of criminal proceedings and assist in his defense. *See id.* ("[E]ven patients with chronic severe mental illness often fall short of the [mental incompetence] threshold." (citing *United States v. Davis*, 93 F.3d 1286, 1290 (6th Cir. 1996))).

Chun does not meet the *Dusky* criteria. A review of the evidence reveals:

### 1. Dr. Ira Schaer

Defense counsel referred Chun to Dr. Schaer.

Dr. Schaer testified that he had "some training" in criminal competency, but criminal competency was a small part of his practice, and he had never testified before. Further, Dr. Schaer stated that his focus is

on child psychology and adolescence; he has done "minimal" work with adults.

Dr. Schaer testified that he administered the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2"), which is designed to measure psychopathology and memory. The MMPI-2 contains validity scales designed to measure malingering, lying, and false presentations. Dr. Schaer said there was no indication Chun was lying.

There are diagnostic tools designed to help determine competency. *See* Richard J. Bonnie, The Competence of Criminal Defendants: Beyond *Dusky* and *Drope*, 47 U. Miami L. Rev. 539, 570 (1993). The MacArthur Competency Assessment Tool – Criminal Adjudication ("MacCAT-CA") is a standardized test which assesses both decisional competency and factual understanding.

Dr. Schaer administered the MacCAT-CA to Chun in 2017. Dr. Schaer did not conduct any stand-alone validity test in conjunction with the MacCAT-CA.

Dr. Schaer noted that the MacCAT-CA results indicate Chun had "significant difficulties in Understanding, Reasoning, and Appreciation of the legal system. [Chun's] ability to factually understand legal proceedings, his rational understanding of the proceedings themselves, and his capacity

to assist his counsel are all significantly compromised." [ECF No. 79-5, PageID.941]. Dr. Schaer opined that Chun was not competent to stand trial. During the testing, he said Chun was confused, lost his train of thought, and had to be brought back into focus.

Dr. Schaer also interviewed Mrs. Chun as part of his evaluation of Chun.

However, Dr. Schaer provided no specific diagnosis beyond stating that Chun suffered memory and cognitive deficits. He testified that he was not comfortable making a diagnosis based on neuropsychological testing he did not conduct, and he only referenced the findings of other doctors in his reports.

A doctor must first decide if a disorder is present before a determination can be made that a mental defect impedes defendant's ability to understand the proceedings or participate in his defense. *See Bruce v. Estelle,* 536 F.2d 1051, 1059-60 (5th Cir. 1976).

Since Dr. Schaer made no diagnosis, the Court does not credit Dr. Schaer's opinion that Chun is incompetent to stand trial.

### 2. Dr. Laura Fadell

Dr. Fadell testified that in her discipline, she evaluates global cognitive functioning in patients with suspected memory deficits. She said

this hearing was the first time she ever opined or testified concerning a defendant's competency to stand trial in any court. To prepare, she said she became familiar with the *Dusky* standard and the statute (18 U.S.C. § 4241(b), (c), and (d)), and familiarized herself with certain studies.

Importantly, Dr. Fadell was not familiar with any competency assessment tools, except the MacCAT-CA. She employed no competency assessment tools herself; and she did not interview Chun for competency in either 2017 or 2018, by asking him questions concerning his knowledge of court proceedings.

Dr. Fadell added an addendum to her 2018 report. There, she discussed how dementia compromises competency. She highlighted research regarding the elderly in the criminal justice system. This addendum came at the request of defense counsel.

The Court declines to credit any testimony given by Faddell concerning Chun's competency.

### 3. **Dr. Arthur Emmer**

Dr. Emmer saw Chun on multiple occasions from June 2017 to October 2019. He had various diagnoses as charted above.

Importantly, at the conclusion of his testimony, Dr. Emmer testified that regardless of Chun's diagnosis, he had no opinion on Chun's competency to stand trial.

### 4. **Dr. Peter Lichtenberg**

Dr. Lichtenberg diagnosed Chun with Mild Neurocognitive Disorder (a/ka Mild Cognitive Impairment), with memory deficits being prominent. He rendered no opinion concerning competency to stand trial.

### 5. **Dr. Jacob Chavez**

Dr. Chavez restored Chun to competency in 2018 while Chun was housed at the United States Medical Center from April 2, 2018 to August 6, 2018. Dr. Chavez opined that Chun was competent to proceed to trial. He indicated that Chun was able to learn new material and was able to demonstrate and retain a basic understanding of the legal proceedings against him, including the charges against him and their consequences, his plea options, and the roles of courtroom participants. Dr. Chavez also believed that Chun could assist rationally in his defense.

What is mystifying is that only weeks after Chun's release from the medical center, defense counsel said "reasonable cause" existed to believe Chun was incompetent to stand trial. Thereafter, Chun was evaluated again by Dr. Fleming and re-evaluated by Dr. Chavez.

In February 2019, Dr. Chavez wrote in a report that "there is uncertainty about Chun's competency."  His overall conclusions were: (1) Chun has a mental defect (i.e., Major Neurocognitive Disorder) that involves impairments in cognitive functioning, specifically in the domain of memory; (2) Chun retains many of his competency-related capacities but substantial, albeit uncertain, deficits exist; (3) Chun's ability to learn and retain information with repetitive presentation indicates he could sufficiently address these deficits and become competent, but his level of cognitive functioning, which is progressively worsening, could not be adequately assessed and may make his current deficits irreparable; and (4) Chun continued to have an adequate factual understanding of the judicial system. Nonetheless, Dr. Chavez said a conclusion of "competent or not competent" was not possible due to the limitations in the current evaluation.

Specifically regarding competency-related issues (i.e., Chun's ability to appreciate the nature and consequences of the proceedings against him and assist properly in his defense), Dr. Chavez noted that Chun's understanding of the roles of the key players in the court system was consistent with the information he learned at the United States Medical Center during his restoration period and exemplified that he had an adequate understanding of the underlying proceedings.

Particularly, Dr. Chavez reported that Chun had an adequate understanding of the roles of key players within the court system: judge, jury, prosecutor, defense counsel, and witnesses. Chun acknowledged that the judge's role is to provide "sentences based on the weight of the defendant's actions or his guilt." [ECF No. 77-9, PageID.815]. With respect to the jury, Chun stated that their role was to "assess the evidence presented to them and decide guilty or not guilty." [*Id.*]. Chun correctly understood and concluded that the judge and the jury were neutral parties.

Chun accurately explained that the prosecutor is the person "who tries to convince the jury why the defendant is guilty," [*id.* at PageID.816], and that the defense attorney is the person who "counters the prosecuting attorney," [*id.*]. Moreover, Chun understood that the defendant must be "truthful to himself . . . and to the jurors and attorneys representing him." [*Id.*]. Finally, Dr. Chavez noted that Chun understood the difference between a bench and jury trial, as well as the role of witnesses.

However, Dr. Chavez noted that a "substantial limitation" of his February 2019 evaluation was that he was unable to include formal neuropsychological testing to more fully evaluate Chun's current memory capacities. Because of this, Dr. Chavez opined that an additional period of evaluation was needed to clarify Chun's abilities.

At the hearing, Dr. Chavez testified that since his February 2019 evaluation, Chun received the additional testing he suggested. The reports from this additional testimony gave Dr. Chavez information and clarity regarding the level of Chun's cognitive functioning. Based on the additional information, Dr. Chavez testified that he was now confident Chun is competent to proceed to trial.

The additional information Dr. Chavez considered included information he derived from Dr. Denney's report. Dr. Denney reviewed raw psychological data from the United States Medical Center that contained "embedded validity indicators" not known to Dr. Chavez that suggested Chun was not applying "proper task engagement" to neurocognitive testing. Dr. Denney also administered several of his own validity tests.

After a review of many of Chun's test results from various doctors – as well as Chun's performance on tests Dr. Denney administered – Dr. Denney concluded that Chun did not apply appropriate task engagement, and that he was "malingering memory dysfunction and incompetency."

Based on this information not available to him in February 2019, Dr. Chavez testified that Chun's present mental disease or defect did not impair his ability to assist in his own defense and to understand the nature and objectives of a trial.

The Court credits Dr. Chavez's opinion delivered at the hearing, concerning Chun's competency to stand trial.

### 6. **Dr. George Fleming**

In his reports and at the time of hearing, Dr. Fleming opined that Chun suffers from a Major Neurocognitive Disorder without behavioral disturbances, probable Alzheimer's Disease.

In order to make the diagnosis of Major Neurocognitive Disorder, a doctor must determine if there is evidence of significant cognitive decline from a previous level of performance in one or more cognitive domains (complex attention, executive functioning, learning and memory, language, perceptual-motor, and social cognition) based on:

> 1. Concern of the individual, a knowledgeable informant, or the clinician that there has been a significant decline in cognitive function; or
>
> 2. A substantial impairment in cognitive performance, preferably documented by standardized neuropsychological testing or, in its absence, another quantified clinical assessment.

DSM-V, at 602.

Dr. Fleming's competency opinion does not appear to be supported by the doctor's own testing or the record. Dr. Fleming did not consult with Chun's wife because he did not believe Mrs. Chun could be objective enough to give unbiased information. Nor does it appear that Dr. Fleming

spoke to any other knowledgeable informant or Chun himself about Chun's decline in function.

Moreover, in cognitive screening tests administered by various doctors from June 12, 2017 to February 12, 2019, Chun consistently scored in the Mild Cognitive Impairment range. [*See* ECF No. 77-3, PageID.758 (summarizing Chun's scores on seven cognitive screening tests)]. This does not support a conclusion of significant cognitive decline from a previous level of performance in one or more cognitive domains.

Several doctors testified and/or opined in their evaluation reports that Dr. Fleming did not conduct many tests of Chun, and they were unsure how Dr. Fleming reached his diagnosis. Indeed, even Dr. Fadell – one of Chun's experts – testified and opined in her 2018 report that Dr. Fleming's diagnosis was questionable: "It is unclear as to how Dr. Fleming determined this diagnosis, as his evaluation was not comprehensive, relied heavily on only a few measures, and there was no mention of information obtained from a knowledgeable source, such as Mrs. Chun." [ECF No. 79-3, PageID.926].

Dr. Denney opined that only two weeks after Chun tested in an "equivocally mild impairment range," Dr. Fleming concluded that Chun was unable to make informed decisions, even though Dr. Fleming's own

neurocognitive test results were within the broadly normal range, with the exception of memory and construction abilities. [*See* ECF No. 77-1, PageID.724].

In order to make a diagnosis of Major Neurocognitive Disorder, the examiner must also document that cognitive deficits interfere with independence in daily activities. *See* DSM-V, at 602.

Dr. Denney testified that Dr. Fleming's reports do not reflect that he considered Chun's activities of daily living.

Dr. Fleming also assumes that a subdural hematoma that Chun experienced in 2003 went untreated and contributes to Chun's current mental disorder. "A subdural hematoma is a collection of blood inside the skull, but outside the brain." [*See* ECF No. 77-5, PageID.764]. Dr. Fleming admitted he had no evidence to support his conclusions that this hematoma is contributing to Chun's dementia. He testified he did not review any of Chun's CAT scans reports or the actual MRI that was taken at that time. Nor did he review Dr. Emmer's notes.

In reality, Dr. Emmer examined Chun and indicated that the hematoma was "treated conservatively." [*See* Dr. Emmer June 12, 2017 Evaluation Note (not filed on the docket)]. Dr. Schreiber noted that repeat brain scans showed resolution of the blood through the normal healing

process.  [*See* ECF No. 77-5, PageID.764].  Dr. Emmer asked Chun and his wife about possible residual neurological complaints as a result of the subdural hematoma; none was noted, including any report of memory loss. [*See id.*].  This undermines Dr. Fleming's opinion that the subdural hematoma contributed to Chun's current cognitive disorder.

But all of the above concerns the diagnosis.  All doctors agree that Chun does suffer some level of impairment. It is important to not lose sight of the task at hand.  The relevant issue does not stop at the diagnosis; rather, it is whether the diagnosed disorder affected Chun's ability applying the *Dusky* standard.

In November 2018, Dr. Fleming did use one of the diagnostic tools designed to assess competency: Evaluation of Competency to Stand Trial – Revised.  The results of this testing showed Chun had a moderate impairment in his competency to stand trial. Dr. Fleming testified that he asked Chun no questions concerning the role of the judge, the different sentences he could face, the role of the prosecutor, the importance of evidence, plea options, and the right to testify.

Dr. Denney is critical of Dr. Fleming's competency conclusions because Dr. Fleming did not sufficiently control for validity or poor task engagement.

Validity is the degree to which a research study accurately measures what it intends to measure. *See* Steve Rubenzer, Ph.D., ABPP, *How Competency Examiners Should (and Often Don't) Assess for Malingering and Poor Effort*, Prosecutor, 50-Nov Prosecutor 16, 19 (Nov. 2017). If the results of a test are determined to be invalid, they should not be used to formulate conclusions, because they do not reflect the person's full functioning ability. [*See* ECF No. 77-1, PageID.720]. Moreover, if the results of an individual's validity tests are invalid, it calls into question the reliability of that person's other (non-validity) test results. [*See id.*].

Dr. Fleming administered no competency tests in November 2019. Nor did he ask Chun any of the above questions. Nevertheless, in November 2019, Dr. Fleming opined that Chun's functioning was at a moderate impairment cognitive level, which he noted is "Average functioning for a person with a high school education." Importantly, Dr. Denney testified that a person would be competent to stand trial if he or she had functioning equal to the average person with a high school education.

The Court does not credit Dr. Fleming's competency findings.

### 7. **Dr. Robert Denney**

The government hired Dr. Denney to perform a neuropsychological evaluation of Chun. In preparation, Dr. Denney reviewed tests, reports, and records from all other doctors involved in assessing Chun's cognitive functioning. He also administered a battery of psychological and neuropsychological tests. His tests included the Competency Assessment Instrument – Revised ("CAI-R").

In reviewing findings from other doctors, Dr. Denney found – as he did when he conducted his own testing of Chun – that Chun's behavior was not completely consistent throughout the examinations.  As an example, Dr. Denney noted:

> [Chun] would often claim he did not know something, but then provide the information after being pressed on the issue further. During one portion of the testing, he indicated he remembered the instructions but simply did not wish to follow them. His behavior was not consistent throughout the examination in that he would interface with the computer easily on a slightly more complicated task, but then require significant assistance for a very simple task. At one point during memory testing, he said, "I guess I really bombed that." When I said, "Really, I thought you said you did not have a memory problem," he said, "Well, I guess I have selective memory—if it is something I think is important, I remember it."

[ECF No. 77-1, PageID.691].

The review of Chun's behavior over twenty months of examinations and testing led Dr. Denney to conclude that Chun had effectively

24

demonstrated the ability to confuse examiners and possibly the Court in a manner that succeeded in delaying Chun's criminal prosecution.

Dr. Denney agreed with all other mental health professionals that a mental defect is present; his diagnosis is Mild Cognitive Impairment with clear stability over the past 2 1/2 years.

Most importantly – with respect to competency – Dr. Denney opined that despite having a "mild form of mental disease or defect," Chun is able to appreciate the nature and consequences of the proceedings against him and assist properly in his defense if he chooses to do so.

To reach this conclusion, Dr. Denney used the CAI-R. With this tool, he questioned Chun on competency-related concepts.

Dr. Denney asked Chun questions concerning his: (1) understanding of charges; (2) appreciation of penalties; (3) appraisal of available defenses; (4) appraisal of courtroom participants; (5) understanding of court procedures; (6) appraisal of likely outcomes; (7) ability to cooperate rationally with counsel; (8) capacity to disclose pertinent information to counsel; (9) capacity to testify; (10) capacity to challenge prosecution witnesses; and (11) ability to manifest appropriate courtroom behavior.

After conducting the CAI-R, Dr. Denney concluded that Chun had a basic understanding of the nature and objectives of a trial and the ability to

participate in his defense. He noted that sometimes Chun said things that were clearly erroneous or said he did not know something, which Dr. Denney doubted because of the diagnosis and Chun's premorbid level of functioning. Chun's ignorance struck Dr. Denney as fabricated. Dr. Denney stated that Chun's current explanations of basic principles of criminal litigation demonstrated a basic understanding of the process and understanding of the charged offenses.

Importantly, Dr. Denney concluded that Chun failed the validity portions of certain tests he took, and that other examiners did not always test for validity. To Dr. Denney, this was a critical omission which explains Chun's inconsistent performances, and which could reasonably lead to a conclusion that Chun exaggerated his mental health issues or demonstrated a non-cooperative test taking approach. Accordingly, Dr. Denney believed test outcomes underrepresented Chun's current abilities to an unknown but significant degree.

The Court credits the opinions of Dr. Denney.

### 8. Dr. Curtis Schreiber

The government employed Dr. Schreiber to review neurodiagnostic studies and other case material and provide an opinion on Chun from the perspective of a neurologist who is a practicing dementia specialist.

Dr. Schreiber concluded that neurocognitive batteries showed more significant deficits than seen on cognitive screening tests.

"[C]ognitive tests [are used] to obtain behavioral samples of abilities," in certain domains, while "neuropsychological assessment[s]" are defined as a comprehensive evaluation that "integrates test results, with history, symptoms, behavioral observations, physical findings . . . to yield interpretive statements about the underlying causes of the patient's performance pattern." *See* T.M. Roebuck-Spencer et al., Cognitive Screening Tests Versus Comprehensive Neuropsychological Test Batteries: A National Academy of Neuropsychology Education Paper, Archives of Clinical Neuropsychology 32, 495 (2017). Based on these batteries, Dr. Schreiber concluded that Chun's pattern of memory loss was not consistent with the memory loss patterns seen in Alzheimer's disease, which is progressive and chronic.

As an example, Dr. Schreiber says that Chun was able to understand the legal process as reported by Dr. Chavez on August 3, 2018. Less than three weeks later at his competency evaluation with Dr. Schaer (report dated August 26, 2018), Chun was noted to be unable to understand legal proceedings. Also, Chun said he had no memory of having met Dr. Chavez.

Dr. Schreiber also reviewed brain scan images. He said these only showed changes compatible with normal age-related white matter changes and the images did not support a vascular Mild Cognitive Impairment or vascular dementia diagnosis.

Dr. Schreiber testified that his role as a neurologist was to integrate subjective disclosures and objective findings pertaining to Chun. Dr. Schreiber stated that if one only considered Chun's subjective reports, the conclusion would be that he is barely stable. However, objective findings indicate Chun is very stable. Dr. Schreiber said that while all evidence is relevant, the objective evidence is entitled to more weight because of the inconsistencies between objective test results and subjective, self-reported evidence.

Dr. Schreiber testified that under these circumstances, the diagnosis of Mild Cognitive Impairment "fits the evidence."

Given the inconsistent patterns and inconsistencies from one doctor to the next, Dr. Schreiber opined that Chun over-reported symptoms to key examiners. This opinion is consistent with the conclusion reached by Dr. Denney: that Chun is malingering lack of memory and lack of knowledge regarding his case.

The Court credits the findings of Dr. Schreiber.

**9.  Lay Witnesses**

In addition, the Court considers the testimony of two lay witnesses –
United States Department of Health and Human Services Special Agent
Michael Pemberton and Chun's wife, Sylvia Chun.

Pemberton conducted a post-arrest interview with Chun and noted
that he appeared coherent, provided logical answers, and understood the
nature of the pending charges.  Chun discussed his medical practice,
prescribing habits, and specific patients. Chun answered Pemberton's
questions appropriately, indicating that he understood the information
conveyed to him.

Next, Mrs. Chun testified that she and Chun have been married for 25
years. She began seeing changes in Chun's behavior in the fall of 2016,
which she attributes to memory loss. When they were on a trip to Italy in
May 2017 – shortly after the FBI raided Chun's office, seized assets, and
Chun surrendered his medical license – Mrs. Chun said he had difficulty in
starting and remaining engaged in conversations.

Mrs. Chun recounted several memory lapses in 2017 and 2018.
They included getting lost driving to and from familiar venues, forgetting
that a dishwasher repair appointment had been made, forgetting earlier
discussions, and other instances of confusion. On the other hand, she

noted that Chun is still able to drive to and walk on a trail near their home without assistance.

With respect to the subdural hematoma Chun suffered in 2003, Mrs. Chun testified that on the day he fell, Chun could not remember what day it was. This hematoma resolved on its own. She testified Chun had no headaches, changes in mood or personality, no memory loss and continued to practice medicine until April 2017, when the FBI searched his office.

Mrs. Chun described their life as having hit a "new normal." She did not believe he was feigning memory loss because she constantly needed to remind and retell him things. Memory losses are what prompted Mrs. Chun to take Chun to Dr. Emmer shortly after the raid on his office.

With respect to daily activities, Mrs. Chun testified that she recently began putting out Chun's clothes and placing orders for him at restaurants; she also manages their finances – although she said she had always done that.

## IV.    CONCLUSION

There is agreement that Chun is genuinely impaired in the cognitive domain of memory.  The Court finds that he has Mild Cognitive Impairment. But a defendant may suffer a mental defect or disease and remain

competent to stand trial.  *See Tucci-Jarraf*, 939 F.3d at 795.  The Court finds that Chun fits into this category of defendants: although a mild cognitive deficit has compromised Chun's functioning and cognitive abilities – because of his superior premorbid intellectual ability – Chun still maintains average functioning abilities, which is short of the standard for being incompetent to stand trial.  This is but one factor the Court considers.

The severity of his impairment may continue to remain in dispute after this order enters.  However, the Court is persuaded that Chun did not apply himself appropriately and consistently to cognitive and self-reporting testing, making it difficult to get an accurate account of his current cognitive strengths and weaknesses.

What is not in dispute from the Court's perspective is that only one expert conducted a legitimate, validated competency assessment of Chun after making a diagnosis: Dr. Robert Denney.  He (1) used a competency assessment tool; (2) conducted a clinical interview applying the structure of that tool to his questions pertaining to competency related issues; (3) controlled for validity in his cognitive testing to arrive at a diagnosis that fit the evidence; and (4) arrived at a conclusion that employed the *Dusky* standard of competence that truly assisted the Court in making the necessary findings concerning Chun's competency to stand trial.

Based on a preponderance of the evidence, Chun is competent to stand trial.  18 U.S.C. § 4241(d).  He has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding.  And, he has a rational and factual understanding of the proceedings against him. *See Dusky*, 362 U.S. at 402.

**IT IS ORDERED**.

S/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  December 6, 2019